**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISON**

CASE NO.: TBA        JUDGE: TBA

Coroplast, LLC,

        Plaintiff,

    v.

Shandong Runping Plastics Industry Co., Ltd. and
Shandong Flutepak Industry Co., Ltd,

        Defendants.

---

**VERIFIED COMPLAINT**

Plaintiff Coroplast, LLC ("Coroplast" or "Plaintiff") hereby brings the present action against Shandong Runping Plastics Industry Co., Ltd. ("Runping") and Shandong Flutepak Industry Co., Ltd ("Flutepak") (collectively "Defendant") and alleges as follows:

**NATURE OF THE CASE**

1.    This is an action for trademark infringement, counterfeiting, passing off, anti-cybersquatting, and deceptive trade practices. Coroplast is the nation's leading manufacturer of corrugated plastic products, commonly used for signage, produce boxes, and tote or storage boxes. Since at least 1972, Coroplast and its predecessors-in-interest have manufactured, distributed, advertised, and sold corrugated plastic products throughout the United States under its brand name and registered trademarks "Coroplast." For years, Coroplast has pioneered innovative and durable products that have developed a loyal following from its satisfied customers. By virtue of this long-time use, Coroplast and its products have become recognized as the leader in the corrugated plastics industry under said name and trademarks.

2.    Coroplast seeks relief against Defendants under the Lanham and Anti-Cybersquatting

1

Consumer Protection Acts, (15 U.S.C. §§ 1114(a), (b) and 1125(a), (d)), and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 et seq. to combat Defendants' infringing use of Coroplast's federally registered trademarks. Unless addressed by this Court, Defendants' unauthorized use of Coroplast's trademarks will continue to result in a likelihood of consumer confusion as to the source of Defendants' products and a false association between Defendants' products with Coroplast, thereby causing irreparable injury to Coroplast. As such, Coroplast seeks damages, including attorneys' fees, and injunctive relief to stop Defendants' ongoing harmful conduct, which is deceptive and confusing to consumers, harmful to the established goodwill of the trademarks associated with Coroplast's corrugated plastics products, and wrongfully seeks to confuse consumers in order to divert them to Defendants' websites and e-commerce storefronts.

## THE PARTIES

3.      Coroplast is a Delaware limited liability company with its principal place of business located at 201 Industrial Park Road, in Vanceburg, Kentucky.

4.      On information and belief, Defendant Runping Plastics Industry Co., Ltd. (also doing business as Shandong Runping Plastics Limited Company and previously known or doing business as Zibo Runping Plastic Co., Ltd and Zibo Coroplast) is a business entity who resides in the Shandong Province of the People's Republic of China. On information and belief, Defendant Runping conducts business throughout the United States, including within the State of Florida and this judicial district, through the operation of the commercial websites and internet stores on online marketplaces (collectively, "Runping's Internet Stores.").

5.      On information and belief, Defendant Shandong Flutepak Industry Co., Ltd. is a business entity who resides in the Shandong Province of the People's Republic of China. On information and belief, Defendant Flutepak conducts business throughout the United States, including within the State of Florida and this judicial district, through the operation of the commercial websites

such as flutepakplastics.com, rpflute.com, and rpflutepads.com (collectively, "Flutepak's Internet Stores.").

6.      On information and belief, Runping and Flutepak are either alternate identities for the same business enterprise or are otherwise an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing the Coroplast's federally registered trademarks in the same transaction, occurrence, or series of transactions or occurrences. For example, though Runping and Flutepak present as different companies operating different websites and online storefronts, with different names, their physical and email addresses are nearly identical, including comprising the exact same domain name within the email address.



Flutepak's Internet Stores



Runping's Internet Stores

7.      On information and belief, Defendants have their principal place of business in Shandong, China.

3

8.     Defendant Runping has at various times advertised that it conducts business at the following U.S. addresses: 9462 Alcosta Blvd., San Ramon, CA 94583 and 8605 Santa Monica Blvd #79525, West Hollywood, CA 90069.  On information and belief, 9462 Alcosta Blvd., San Ramon, CA 94583 is a residential address.   On information and belief, 8605 Santa Monica Blvd #79525, West Hollywood, CA 90069 is a mail drop box.  On information and belief, Defendant Runping is not registered to conduct business in any state within the United States and does not have a registered agent within the United States.

9.     On information and belief, Defendant Flutepak is not registered to conduct business in any state within the United States and does not have a registered agent within the United States

10.     On information and belief, Defendants conduct business through electronic communications, primarily via messaging features through their websites and via e-mail.

## JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction over the claims in this action arising under the Lanham Act, 15 U.S.C. § 1051, et seq., and the federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     This Court has personal jurisdiction over Defendants as they have knowingly directed and targeted their unlawful activity at Coroplast, who regularly transacts business in the State of Florida, and who sells Coroplast® corrugated plastic products to customers in this district, including to its distributor Grimco.  Coroplast® corrugated plastic products are also sold through retailers within the State of Florida, including Home Depot and Lowe's.

13.     Upon information and belief, Defendants directly target business activities toward

4

consumers in the United States, including Florida, through the Runping's Internet Stores and Flutepak's Internet Stores (collectively, "Defendants' Internet Stores").

14.     For example, Flutepak advertises that it sells product to consumers in the United States.



Flutepak's Internet Stores

15.     Specifically, Defendants are reaching out to do business with Florida businesses and residents by operating one or more commercial, Internet Stores through which Florida businesses and residents can purchase products identified under Coroplast's registered trademarks. Defendants have targeted sales from Florida residents by operating online stores that offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, has sold products under Coroplast's registered trademarks to residents of Florida.

16.     For example, on information and belief, Defendants have transacted and conducted business in the State of Florida by wrongfully diverting customers and potential customers in Florida to their websites, where Defendants advertises, offer for sale, and sell products using Coroplast's registered trademarks in connection with Defendants' advertisements, offers for sale, and sales.

Specifically, on information and belief, Defendants have targeted sales to Florida businesses and residents by setting up and operating websites that targets United States consumers, offering shipping to customers in the United States, including Florida, accepting payment in U.S. dollars and/or funds from U.S. bank accounts, and providing the address of a purported office in the United States. On information and belief, Defendants have specifically offered for sale and sold products using or featuring Coroplast's registered trademarks to residents of Florida. Defendants' websites indicate that payments may be made to Defendants' bank account, Western Union, or PayPal. Upon information and belief, Defendant has an annual export revenue of $6,000,000, including exports to the United States. Defendant has also attended trade shows in the United States, such as the 2024 Global Produce & Floral Show.

17.     On information and belief, Defendant Runping has transacted and conducted business in the State of Florida by selling and shipping products to Delivery Signs in Orlando, Florida; T&F in North Miami, Florida; Orlando Printers in Orlando, Florida; Akarsh Kolaprath in Orlando, Florida.

18.     On information and belief, Defendant Runping has imported its products into the United States through PortMiami.

19.     On information and belief, the Defendants are committing tortious acts, is engaging in interstate commerce, and has wrongfully caused Coroplast substantial injury in the State of Florida.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims at issue in this litigation occurred in this judicial District within the State of Florida, and this Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities towards consumers in the United States, including Florida, through at least the Defendants' Internet Stores.

**COROPLAST'S LONGSTANDING USE OF THE COROPLAST TRADEMARK**

21.     For over sixty years, Plaintiff Coroplast has been widely recognized throughout the

6

United States and elsewhere for its innovative, durable, high-quality plastic materials used in a variety of industries. Coroplast is North America's market share leader and largest manufacturer of corrugated plastic sheets for signs and reusable packaging.

22.     In particular, Coroplast is well-known as the source of the famous Coroplast® brand of premium corrugated plastic products, which are engineered using a proprietary manufacturing process that enhances durability while maintaining flexibility ("Coroplast Products"). Coroplast Products are used nationwide by consumers and businesses for signage, reusable packaging, and industrial applications due to their exceptional resistance to moisture, chemicals, and UV exposure.

23.     Although the corporate structure has evolved over the years, since 1972, Coroplast and its corporate predecessors have continuously distributed and sold Coroplast Products throughout the United States under the COROPLAST name and trademarks.

24.     In addition to its common law rights, Coroplast is the exclusive owner of the United States registration certificates for the COROPLAST Trademarks, U.S. Reg. Nos. 1,017,649 and 3,510,604 (collectively, the "COROPLAST Trademarks"). True and correct copies of the registration certificates for U.S. Reg. Nos. 1,017,649 and 3,510,604 are attached hereto as Exhibits 1 and 2, respectively.

25.     Coroplast and its corporate predecessors have built substantial goodwill in the COROPLAST Trademarks. The COROPLAST Trademarks are famous and valuable assets of Coroplast.

26.     A Section 15 declaration of incontestability for the U.S. Reg. No. 1,017,649 was accepted by the U.S. Patent and Trademark Office in 1981.

27.     A Section 15 declaration of incontestability for the U.S. Reg. No. 3,510,604 was submitted to and accepted by the U.S. Patent and Trademark Office in 2014.

28.     The federal registrations for the COROPLAST Trademarks are valid, subsisting, in full

force and effect, and are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the COROPLAST Trademarks constitute *prima facie* evidence of their validity and of Coroplast's exclusive right to use the COROPLAST Trademarks.

29.     Coroplast Products are distributed and sold to consumers throughout the United States, through a network of independent distributors. Coroplast Products have attracted a prominent following due to their durable, lightweight, sustainable, and innovative features.

30.     Coroplast owns and operates an Internet website accessible through the domain name coroplast.com, which promotes Coroplast Products and includes a directory of Coroplast's distributors. Coroplast's website also contains detailed descriptions of Coroplast Products, including videos explaining the manufacturing process, research and development information, product specifications, safety information, and resources for various uses of Coroplast products.

31.     Coroplast markets its Coroplast Products and COROPLAST Trademarks throughout the United States and abroad. Specifically, Coroplast prominently displays its COROPLAST Trademarks on its website and in product literature featuring and promoting its Coroplast Products. Representative examples of Coroplast's use of the COROPLAST Trademarks are attached hereto as Exhibit 3.

32.     Coroplast extensively markets its COROPLAST Trademarks in the United States and other countries and (together with its predecessors) has spent considerable time and resources to build the Coroplast® brand. Coroplast has further expended considerable resources on advertising, marketing, and promoting the COROPLAST Trademarks and in maintaining the distribution and sale of high-quality products in connection therewith. For example, Coroplast invested in excess of $300,000 marketing its Coroplast® brand since 2021.

33.     Coroplast's sales of Coroplast Products in the United States in 2021-2024 alone exceeded $200,000,000.

34. By virtue of Coroplast's continued use, advertising, and promotion, the COROPLAST Trademarks have become well known to the trade and the general public throughout the United States, and Coroplast has established extensive goodwill and public recognition in, and to, the inherently distinctive COROPLAST Trademarks as an exclusive identification of Coroplast's corrugated plastics products.

35. The Coroplast Trademarks are distinctive when applied to corrugated plastic products, signifying to the purchaser that the products come from Coroplast and are manufactured to its quality standards. Coroplast has, and continues to, expend a substantial amount of time, effort, money, and other resources to develop and maintain the goodwill that has come to be associated with its corrugated plastics products sold under the COROPLAST Trademarks.

## DEFENDANTS' INFRINGING AND OTHER WRONGFUL CONDUCT

36. Defendants have been using the term "Coroplast" in connection with the advertising, offering for sale, and, upon information and belief, sale, of goods identical and/or substantially similar to and in competition with the Coroplast Products. Specifically, without authorization, Defendants are using the COROPLAST Trademarks in connection with the advertisement, offer for sale, and upon information and belief, sale of corrugated plastics products ("Infringing Products").

37. The Defendants' Internet stores are the online storefronts at third-party e-commerce marketplaces such as Alibaba.com, as well as their own websites, wherein Defendants are using Coroplast's distinctive COROPLAST Trademarks in connection with Defendants' acts of advertising, offering for sale and selling Infringing Products to consumers in this Judicial District and throughout the United States. On information and belief, e-commerce stores and websites like the Defendants' Internet Stores are estimated to receive thousands of visits per year and to generate millions of dollars in annual online sales.

38. Defendants facilitate sales by designing the Defendants' Internet Stores so that they

appear to unknowing consumers to be authorized online retailers or wholesalers selling genuine Coroplast Products, or otherwise affiliated with, associated with, or licensors of Coroplast and the COROPLAST Trademarks. For example, Defendant Runping's website actually referred to Coroplast's registered trademarks and referenced the Inteplast Group, of which Coroplast is a part of.

39.    Defendant Runping operated a domain name—chinacoroplast.com ("Chinacoroplast Infringing Domain")—which fully incorporated the COROPLAST Trademarks into the URL.

40.    Defendants, through the Defendants' Internet Stores, uses the COROPLAST Trademarks in product descriptions, leading consumers to believe that the Chinacoroplast Infringing Domain, Defendants' Internet Stores, and Infringing Products are from an authorized Coroplast distributor or otherwise affiliated with or associated with Coroplast. Coroplast has not licensed or authorized Defendants to use its COROPLAST Trademarks, and Defendants are not an authorized distributors of genuine Coroplast Products. True and correct copies of screenshot printouts showing the Defendants' Internet Stores are attached as Exhibit 4.

41.    Defendants, without any authorization or license from Coroplast, have knowingly and willfully used and continue to use the COROPLAST Trademarks in connection with the advertising, offering for sale, and sale of Infringing Products in the United States and Florida over the Internet. On information and belief, each of Defendants' Internet Stores are shipping to and have sold Infringing Products in the United States, including Florida.

42.    Defendants' use of the COROPLAST Trademarks in connection with the advertising, distribution, offering for sale, and sale of Infringing Products into the United States, including Florida, is likely to cause and, on information and belief, has caused confusion, mistake, and deception by and among consumers and is irreparably harming Coroplast. Specific examples of such infringing use causing irreparable harm by Defendants are set forth in further detail below.

43.    The Infringing Products have been offered for sale by Defendant Runping at Runping's

Internet Stores, including chinacoroplast.com, runpingplast.com, runpingplastic.com, and on Defendant Runping's online storefront at Alibaba.com.

44.　　The Infringing Products have been offered for sale by Defendant Flutepak at Defendant Flutepak's Internet Stores including flutepakplastics.com, rpflute.com, and rpflutepads.com.

45.　　On information and belief, Defendant Runping reserved the Chinacoroplast Infringing Domain and began promoting and offering Infringing Products in competition with the Coroplast Products, with actual or constructive knowledge of Coroplast's registered trademark rights in the COROPLAST Trademarks.

46.　　On information and belief, Runping's Internet Stores and Flutepak's Internet Stores are accessible throughout the United States and the world via the Internet, including the State of Florida.

47.　　On its face, the Chinacoroplast Infringing Domain Name is confusingly similar—and was clearly intended to be confusingly similar—to Plaintiff's website domain (coroplast.com) and the COROPLAST Trademarks. This included, but is not limited to, the following:

    a.　The use of the website domain name: "chinacoroplast.com;"

    b.　The use of the name and mark "Coroplast" throughout the Chinacoroplast Infringing Domain's website;

    c.　The use of the business name "Zibo Coroplast I&E Co., Ltd." throughout the Chinacoroplast Infringing Domain's website.

48.　　Defendants' Internet Stores also contain links to social media and other websites that wrongfully utilize Coroplast's registered trademarks, including the following:

    a.　Twitter/X Link: https://twitter.com/China_Coroplast

    b.　YouTube Link:

       https://www.youtube.com/channel/UCTmTX5nf8tEuHpitm5ihyxg

49.　　The Twitter/X and YouTube links contained on Defendant Runping's Internet Stores

direct viewers to Twitter/X and YouTube social media accounts, which contain many of the same infringing characteristics as identified in Paragraph 42, above.

50.     Because of their obvious and intentional similarity to Plaintiff's COROPLAST Trademarks, consumers are likely to believe that Defendant Runping's Internet Stores and linked social media accounts are authorized, approved, sponsored, endorsed, and/or otherwise affiliated with Coroplast.

51.     Defendant Runping further represents itself as "Zibo Coroplast" to customers, further incorporating Plaintiff's COROPLAST Trademarks.

52.     As recently as autumn of 2024, Defendant Runping conducted business under Zibo Coroplast identity at the Global Produce Floral Show in Atlanta, Georgia:



53.     As depicted below, Defendant Runping describes itself as a leading manufacturer, supplier, and factory of Coroplast Board in China:

» Home  /  Coroplast Board

**Coroplast Board Manufacturer - High-Quality Wholesale Supplier & Exporter from China**

Shandong Runping Plastic Industry Co., Ltd. is a leading manufacturer, supplier, and factory of Coroplast Board in China. Our Coroplast Board is made of high-quality polypropylene material, which makes it lightweight, durable, and waterproof. This Board is perfect for use in various fields, including advertising, packaging, floor protection, and many more.

Our Coroplast Board can be easily cut and folded to any shape or size. It is also easy to print on using UV printing, screen printing, or digital printing methods. Its smooth and even surface allows for excellent printing quality, making it ideal for various applications.

At Shandong Runping Plastic Industry Co., Ltd., we take pride in delivering quality Coroplast Board that meets our customer's expectations. Our products are available in different sizes, colors, and thicknesses to cater to their unique needs. We also provide custom solutions and excellent customer service to ensure 100% customer satisfaction.

If you're looking for high-quality and durable Coroplast Board, Shandong Runping Plastic Industry Co., Ltd. has got you covered. Contact us today to learn more about our products!

54.    As depicted below, Defendant Runping uses the COROPLAST Trademarks in its product descriptions:









2mm 3mm 4mm 5mm 6mm 8mm 10mm 4×8 Waterproof pp **Coroplast** Corex Corrugated Plastic Coreflute Sheet

**$0.73**

Min. order: 1,000 pieces

Est. delivery by May 19

5 views

Shandong Runping Plastic Industry Co., Ltd.

Verified   7 yrs   CN Supplier   **5.0**/5.0 (1 review)

Add to cart

Chat now

Add to compare



**润平塑业** A·PLASTIC

VIDEO   ABOUT US ▾   CONTACT US

plastic seafood box plastic fish box coroplast box poly carton pp folding box Corrugated Plastic Pick Bins poly box

Short Description:

| |
|---|
| plastic seafood box |
| plastic fish box |
| coroplast box |
| poly carton |
| pp folding box |
| Corrugated Plastic Pick Bins |
| poly box |

Properties

1.unaffected by water.

2.Stronger and more durable than corrugated fiberboard.

3.Extremely lightweight.

4.Won't rust, rot, mildew or corrode like metal or wood.

5.Can be printed on easily and clearly.

Options

‹   ›



**润平塑业** A·PLASTIC

VIDEO   ABOUT US ▾   CONTACT US

pp coroplast sheet

Short Description:

The corrugated plastic sheets and rolls widely use in floor protection,construction,wall protection tree protections and so on sheets and rolls all available.recycled use is OK and you can use for other protections.

✉ Send email to us    📄 Download as PDF

‹   ›

Product Detail   FAQ   Product Tags

14



55.   As depicted below, Defendant Flutepak uses the COROPLAST Trademarks in its product descriptions:





56.    On information and belief, at all relevant times, Defendants had knowledge that Coroplast is a registered trademark owned by Coroplast.  For example, the Chinacoroplast Infringing Domain website contained the following language: "Coroplast is a brand name of corrugated plastic

and a registered trademark of Coroplast, LLC, a member of the Inteplast Group of companies." *See* https://www.chinacoroplast.com/news/coroplast-applications/, last accessed June 26, 2025 (currently available the Internet Archive at https://web.archive.org/web/20201125021924/https://www.chinacoroplast.com/news/coroplast-applications/). *See* Exhibit 5.

57.     Prior to filing this Complaint, Coroplast hand-delivered a cease and desist letter to Defendant Runping's representatives at the Global Produce Floral Show in Atlanta, Georgia.  Coroplast likewise sent Defendant Runping the cease and desist letter by and through its legal counsel to the email address listed on Defendant Runping's website.  To date, Coroplast has not received any response or acknowledgement to the cease and desist letter.

58.     Because of the obvious and intentional copying and unauthorized use of the COROPLAST Trademarks, consumers are likely to believe that Defendants' Infringing Products are authorized, approved, sponsored, endorsed, and/or otherwise affiliated with Coroplast.

59.     Defendants' use of the COROPLAST Trademarks on Defendants' Internet Stores and in connection with the advertisement, offer for sale, and sale of Infringing Products is intended to cause, and, on information and belief, is actively causing, confusion with consumers, thereby allowing Defendants to trade on Coroplast's goodwill and reputation, and is further intentionally causing, and will continue to cause, consumer confusion as to the source, authorization, sponsorship, connection, endorsement, or affiliation of Defendants' Infringing Products and Plaintiff's Coroplast Products.

60.     On information and belief, Defendant Runping has never used the Chinacoroplast Infringing Domain in connection with any bona fide offering of goods or services prior to incorporating the name "chinacoroplast" in the domain name registration.

61.     On information and belief, Defendant Runping has made no bona fide noncommercial or fair use of the Chinacoroplast Infringing Domain in connection with its websites.

62.     On information and belief, Defendant Runping further intended to use the Chinacoroplast Infringing Domain to divert customers from Plaintiff's products by wrongfully profiting from Coroplast's goodwill in the COROPLAST Trademarks. For instance, Defendant Runping is using Plaintiff's COROPLAST Trademarks in connection with the advertisement, offer for sale, and sale of products that have not been made using Plaintiff's proprietary methods and the quality of which is unknown, thereby harming Plaintiff's goodwill and reputation.

63.     Despite actual notice of the COROPLAST Trademarks and Plaintiff's demand to stop using the same, Defendants continue to use the COROPLAST Trademarks in connection with the sale of their Infringing Products, willfully ignoring Coroplast's trademark rights. The continued use by Defendants are, therefore, willful and deliberate and reflects Defendants' intent to confuse consumers and profit from the goodwill associated with Coroplast and the COROPLAST Trademarks.

64.     Defendants' use of the COROPLAST Trademarks in connection with the sale of their Infringing Products in interstate commerce is actively causing, and unless restrained, will continue to cause, monetary damage and immediate irreparable harm to Coroplast, its reputation, and the goodwill associated with the COROPLAST Trademarks, for which Coroplast has no adequate remedy at law.

## COUNT I
### Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114

65.     Coroplast re-alleges and incorporates by reference each allegation contained in Paragraphs 1 through 64, above, as if fully set forth herein.

66.     This cause of action is for trademark infringement and counterfeiting against Defendants based on Defendants' offer for sale, sale, distribution, advertising, and promotion of the Infringing Products in interstate commerce in connection with Coroplast's distinctive COROPLAST Trademarks. Consumers have come to expect the highest quality from Coroplast Products offered, sold, or marketed under the COROPLAST Trademarks.

18

67.     Defendants have advertised, offered to sell, marketed, distributed, and sold—and are currently selling, offering for sale, marketing, distributing, and advertising—the Infringing Products using Coroplast's distinctive COROPLAST Trademarks without Coroplast's permission.

68.     Defendants have further used reproductions, counterfeits, copies, and/or colorable imitations of Plaintiff's distinctive COROPLAST Trademarks in the titles and descriptions of their product listings in connection with the advertisement, offer for sale, and sale of the Infringing Products, without Coroplast's permission.

69.     Coroplast is the exclusive owner of the COROPLAST Trademarks.

70.     Coroplast's United States Registrations for the COROPLAST Trademarks are in full force and effect.

71.     On information and belief, Defendants have had knowledge of Coroplast's rights in the COROPLAST Trademarks, and are willfully infringing and intentionally using, without authorization, the COROPLAST Trademarks.

72.     Defendants' willful, intentional, and unauthorized use of the COROPLAST Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Infringing Products among the general public.

73.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

74.     Defendants' conduct has irreparably harmed Coroplast, and if not enjoined, will continue to irreparably harm Coroplast and confuse the public.

75.     Coroplast's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Defendants should be permanently enjoined pursuant to 15 U.S.C. § 1116.

76.     By reason of Defendants' acts, Coroplast has suffered irreparable harm to its reputation and the goodwill of its well-known COROPLAST Trademarks, as well as damage and injury to its

business, reputation, and goodwill, and has sustained loss of revenues and profits. Coroplast has no adequate remedy at law, and if Defendants' actions are not enjoined, Coroplast will continue to suffer irreparable harm to its reputation and the goodwill of its well-known COROPLAST Trademarks.

77.     The injuries and damages sustained by Coroplast have been directly and proximately caused by Defendants' wrongful reproduction and use of the COROPLAST Trademarks in connection with Defendants' advertisement, offer to sell, and sale of the Infringing Products.

78.     Due to Defendants' willful use of Coroplast's registered COROPLAST Trademarks to advertise and sell the Infringing Products, Defendants should account for and pay to Coroplast all profits realized by Defendants, and the amount of damages for infringement of the COROPLAST Trademarks should be increased by a sum not exceeding three times the amount thereof. In the alternative, Coroplast should be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(1) and/or (2).

79.     Due to the exceptional nature of the case, Coroplast should be awarded its actual damages, the costs of this action, and the attorneys' fees incurred by Coroplast in connection with this action.

**COUNT II**
**False Designation of Origin Under 15 U.S.C § 1125(a)**

80.     Coroplast re-alleges and incorporates by reference each allegation contained in Paragraphs 1 through 79, above, as if fully set forth herein.

81.     Defendants' use of the COROPLAST Trademarks in connection with the advertisement, offer for sale, and sale of the Infringing Products has created a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Coroplast or the origin, sponsorship, or approval of Defendants' Infringing Products.

82.     By using Coroplast's COROPLAST Trademarks in connection with the advertisement,

offer to sell, and sale of the Infringing Products, Defendants have created a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Infringing Products.

83.     Defendants' false designation of origin and misrepresentation of facts as to the origin and/or sponsorship of the Infringing Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

84.     Coroplast has no adequate remedy at law and, if Defendants' actions are not enjoined, Coroplast will continue to suffer irreparable harm to its reputation and to the goodwill of its COROPLAST Trademarks.

85.     By reason of Defendants' acts, Coroplast has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain loss of revenues and profits.

**COUNT III**
**Violation of the Anti-Cybersquatting Consumer Protection Act and Claim for Injunctive Relief as to the Defendant Runping Operating a Defendant Domain Name Incorporating the COROPLAST Trademarks Under 15 U.S.C. § 1125(d)**

86.     Coroplast re-alleges and incorporates by reference each allegation contained in Paragraphs 1 through 85, above, as if fully set forth herein.

87.     The COROPLAST Trademarks were federally registered at the United States Patent and Trademark Office at the time Defendants began use of the Chinacoroplast Infringing Domain.

88.     Coroplast is the exclusive owner of the COROPLAST Trademarks.

89.     Because of its widespread reputation and recognition by the general public as a designation of the source of Plaintiff's goods, the COROPLAST Trademarks are distinctive marks and were distinctive before and at the time of the registration of Defendant Runping's Infringing Domains (specifically including chinacoroplast.com).

90.     The Chinacoroplast Infringing Domain belonging to Defendant Runping is confusingly similar to Plaintiff's domain name and Plaintiff's COROPLAST Trademarks.

91.     Upon information and belief, Defendant Runping operates the Chinacoroplast Infringing Domain incorporating the COROPLAST Trademarks having acted with bad faith intent to profit from the unauthorized use of the COROPLAST Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the COROPLAST Trademarks. Defendant Runping used the Infringing Domains with a bad faith intent to profit from Plaintiff's COROPLAST Trademarks by diverting customers from Plaintiff with knowledge of Plaintiff's federal registrations, and thereby causing Plaintiff irreparable harm.

92.     Defendant Runping's acts violate the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

93.     Coroplast's remedy at law is not adequate to compensate it for the injuries Defendant Runping has and will continue to inflict on Coroplast. The registration and use of the Chinacoroplast Infringing Domain incorporating the COROPLAST Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Coroplast. Accordingly, Coroplast is entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

94.     Coroplast is also entitled to recover the profits derived from Defendants' wrongful conduct.

95.     Coroplast is further entitled to recover its actual damages, the costs of this action, and the attorneys' fees incurred by Coroplast in connection with this action.

96.     Coroplast is also entitled to an award of statutory damages under 15 U.S.C. § 1117(d).

## COUNT IV
**Violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 et seq.**

97.     Coroplast re-alleges and incorporates by reference each allegation contained in Paragraphs 1 through 96, above, as if fully set forth herein.

98.     Defendants have engaged in acts violating Florida law including, but not limited to, passing off their corrugated plastics products and Infringing Products as those of Coroplast; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiff's Coroplast Products; representing that their corrugated plastics products are associated with Plaintiff's Coroplast Trademarks when they are not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

99.     The foregoing acts by Defendants constitute a willful violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 et seq.

100.    Coroplast has no adequate remedy at law, and Defendants' conduct has caused Coroplast to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Coroplast will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**WHEREFORE**, Plaintiff Coroplast, LLC respectfully requests that this Court enter judgment in favor of Coroplast, LLC, and against Defendants, and:

A.      Enter a Judgement declaring that Defendants have infringed the rights of Plaintiff in the federally registered COROPLAST Trademarks in violation of 15 U.S.C. §§ 1114(a) and (b) and 15 U.S.C. §§ 1125(a), and (d);

B.      Preliminarily and Permanently enjoin and restrain Defendants, their officers, agents, employees, representatives, and all others acting in concert or participation with any of them from:

        a.  using the COROPLAST® registered trademarks, or any other colorable imitation of the same, or any mark that is confusingly similar to the same, or doing any other act or thing, including but not limited to publication on the internet, or the use of search engine optimization or metatags, likely to induce the belief that Defendants' business or products are in any way connected with

23

Coroplast's business or products, or are sponsored or approved by Coroplast;

b.   passing off, inducing, or enabling others to sell or pass of any product as a genuine Coroplast Product or any other product produced by Coroplast that is not Coroplast's or not produced under the authorization, control, or supervision of Coroplast and approved by Coroplast for sale under the Coroplast Trademarks;

c.   using, linking to, transferring, selling, exercising control over, or otherwise owning the Chinacoroplast Infringing Domain, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell the Infringing Products; and

d.   owning and/or hosting websites at any domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Plaintiff's COROPLAST Trademarks or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine Coroplast Product or not authorized by Coroplast to be sold in connection with the Coroplast Trademarks;

C.   Direct Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Coroplast a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph B(a) through (d), above;

D.   Enter an Order that, at Coroplast's choosing, the registrant of Defendants' Infringing Domains shall be changed from the current registrant to Coroplast, and that the domain name registries for the Infringing Domains shall unlock and change the registrar of record for the Infringing Domains to a registrar of Coroplast's selection, and that the domain name registrars take any steps necessary to

transfer the Infringing Domains to a registrar of Coroplast's selection; or that the same domain name registries shall disable the Infringing Domains and make them inactive and untransferable;

E.     Enter an Order that, upon Coroplast's request, those in privity with Defendants and those with notice of the Preliminary and Permanent Injunction, including any online marketplaces Alibaba Group Holding Ltd., Alipay.com Co., Ltd., and any other related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Infringing Domain and Defendants' Internet Stores, and domain name registrars shall:

> a.   disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products using the COROPLAST Trademarks, including any accounts associated with Defendants;
>
> b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products using the COROPLAST Trademarks; and
>
> c.   take all steps necessary to prevent links to the Defendants' Infringing Domains identified herein from displaying in search results, including but not limited to, removing links to the Infringing Domain from any search index; and

F.     Direct Defendants to account for and pay over to Coroplast all profits derived by Defendants from their acts complained of herein, together with prejudgment interest and that the amount of damages for infringement of the COROPLAST Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117(a);

G.     Declare that Defendants' use of the COROPLAST Trademarks is willful;

H.     Award Coroplast all actual damages sustained by Coroplast and costs of this action as provided by 15 U.S.C. § 1117(a);

I.      Enter judgment awarding Coroplast three times the profits or damages, whichever amount is greater), that are assessed for any violation of 15 U.S.C. § 1114(1)(a), together with a reasonable attorneys' fee and prejudgment interest pursuant to 15 U.S.C § 1117(b)(1);

J.      In lieu of actual damages and profits, award Coroplast statutory damages for willful trademark counterfeiting of $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed pursuant to 15 U.S.C. § 1117(c)(2), or in the alternative, statutory damages of $200,000 per counterfeit mark per type of goods sold, offered for sale, or distributed pursuant to 15 U.S.C. § 1117(c)(1);

K.      Award Coroplast $100,000 in statutory damages per domain name incorporating any of the COROPLAST Trademarks, pursuant to 15 U.S.C. § 1117(d);

L.      Award Coroplast prejudgment and post-judgment interest;

M.      Declare this case exceptional and award Coroplast its reasonable attorneys' fees; and

N.      Award Coroplast such other or further relief as the Court deems just and proper.


I declare under the penalty of perjury that the foregoing is true and correct.


Date: January 20, 2026

_Karen Dicang_
_____

Karen Dicang, Senior Marketing & Sales Director, Coroplast, LLC

Dated:  January 22, 2026

Respectfully submitted,

By:  */s/ B. Scott Eidson*

**Stinson LLP**
Scott Eidson (Florida Bar No. 25928)
John Schroeder (*pro hac vice*
*Application forthcoming*)
7700 Forsyth Blvd.
Suite 1100
St. Louis, Missouri 63105
Telephone: 314.863.0800
Facsimile: 314.863.9388
scott.eidson@stinson.com
john.schroeder@stinson.com

*Attorneys for Coroplast, LLC*